RICHARD J. NELSON (State Bar No. 141658)
PETER M. COLOSI (State Bar No. 252951)
SIDEMAN & BANCROFT LLP
One Embarcadero Center, 22nd Floor
San Francisco, California 94111-3629
Telephone:     (415) 392-1960
Facsimile:     (415) 392-0827

Attorneys for CISCO SYSTEMS, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CISCO SYSTEMS, INC., a California corporation, and CISCO TECHNOLOGY, INC., a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>INFINITY MICRO COMPUTER, INC., a corporation; MICHAEL BANAFSHEHA, an individual; MATTHEW BANAFSHEHA, an individual; DOES 1 through 50, inclusive<br><br>Defendants. | CASE NO.   14-cv-2961<br><br>**Complaint for Damages and Injunctive Relief for:**<br><br>1. **TRADEMARK INFRINGEMENT, 15 U.S.C. § 1141(1)(a);**<br>2. **TRADEMARK COUNTERFEITING, 15 U.S.C. § 1114(1)(b);**<br>3. **FALSE DESIGNATION OF ORIGIN, 15 U.S.C. § 1125(a);**<br>4. **TRADEMARK DILUTION, 15 U.S.C. § 1125(c);**<br>5. **CALIFORNIA STATUTORY DILUTION, CAL. BUS. & PROF. CODE §§ 14245 & 14247;**<br>6. **CALIFORNIA STATUTORY UNFAIR COMPETITION, CAL. BUS. & PROF. CODE § 17200 et seq.;**<br>7. **CALIFORNIA COMMON LAW TRADEMARK INFRINGEMENT;**<br>8. **FRAUD, CAL. CIV. CODE § 1710**<br><br>**Demand for Jury Trial** |

COMES NOW, Plaintiffs, CISCO SYSTEMS, INC. and CISCO TECHNOLOGY, INC., and complain and allege as follows:

## THE PARTIES

1.      Plaintiff, CISCO SYSTEMS, INC. (hereinafter referred to as CISCO), is and was at all

(sidebar) LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3629

1  relevant times an incorporated entity authorized to do business in all counties within the State of

2  California.

3        2.     Plaintiff, CISCO TECHNOLOGY, INC. (hereinafter referred to as CTI), is and was at

4  all relevant times an incorporated entity authorized to do business in all counties within the State of

5  California.

6        3.     Defendant, INFINITY MICRO COMPUTER, INC. (hereinafter referred to as

7  INFINITY MICRO) is and was at all relevant times a California Corporation, operating in the County

8  of Los Angeles, in the State of California.

9        4.     CISCO and CTI (hereinafter referred to as Plaintiffs) are informed and believe, and

10  based thereon allege, that MICHAEL BANAFSHEHA ("MICHAEL") is the President and a principal

11  of INFINITY MICRO, and is personally involved in the buying and selling of counterfeit Cisco

12  products. Plaintiffs are further informed and believe, and based thereon allege, that MICHAEL is and

13  was at all relevant times an individual residing in the County of Los Angeles, in the State of

14  California.

15        5.     Plaintiffs are informed and believe, and based thereon allege, that MATTHEW

16  BANAFSHEHA ("MATTHEW") is the head of purchasing and a principal of INFINITY MICRO,

17  and is personally involved in the buying and selling of counterfeit Cisco products. Plaintiffs are

18  further informed and believe, and based thereon allege, that MATTHEW is and was at all relevant

19  times an individual residing in the County of Los Angeles, in the State of California.

20        6.     The true names and capacities, whether individual, corporate, associate, or otherwise,

21  of the Defendants named herein as DOES 1 through 50, inclusive, are unknown to Plaintiffs who,

22  therefore, sue said Defendants by such fictitious names. Plaintiffs will amend this Complaint to show

23  the true names and capacities of these DOE defendants when the same shall have been fully and

24  finally ascertained.

25        7.     Plaintiffs are informed and believe, and based thereon allege, that each of the

26  defendants designated herein as a DOE is legally responsible, in some manner, for the events and

27  happenings herein referred to, and legally caused damages to Plaintiffs as herein alleged.

28

8.     INFINITY MICRO, MICHAEL, MATTHEW, and DOES 1-50 are collectively referred to throughout this Complaint as DEFENDANTS.  Plaintiffs are informed and believe, and based thereon allege, that DEFENDANTS are citizens and residents of the State of California, and/or are doing business in the State of California, and/or participated in or undertook obligations or rights arising out of the subject events and happenings herein referred to, engaged in actions or omissions, either intentional or negligent, regarding the subject events and happenings herein referred to, and/or benefited unjustly from the efforts, work and goods of Plaintiffs.

9.     At all times relevant to this action, each Defendant, including those fictitiously named Defendants, was the agent, servant, employee, partner, joint venturer, accomplice, conspirator, alter ego, or surety of the other Defendants and was acting within the scope of that agency, employment, partnership, venture, or suretyship with the knowledge and consent or ratification of each of the other Defendants in doing the things alleged in this Complaint.

## JURISDICTION

10.     This is an action arising under the Trademark Act of 1946, 15 U.S.C. § 1051 *et seq.* (the "Lanham Act") and under the laws of the State of California.

11.     This Court has original subject matter jurisdiction pursuant to the provision of the Lanham Act, 15 U.S.C. § 1121, as well as under 28 U.S.C. §§ 1331 and 1338(a) and (b).  This Court has supplemental jurisdiction over the claims arising under the laws of the State of California pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

12.     This Court has personal jurisdiction over DEFENDANTS because Plaintiffs are informed and believe, and based thereon allege, that INFINITY MICRO is an active business entity located at 5300 West 104th Street, Los Angeles, CA 90045, whose agent for service of process is Michael Banafsheha of Los Angeles, California; because DEFENDANTS have and appear to continue to transact business within the State of California; because DEFENDANTS have misrepresented the authentic nature of the counterfeit "Cisco" products to California residents; because DEFENDANTS have caused tortious injury to Plaintiffs' trademarks within the State of California; and because DEFENDANTS have systematically directed electronic activity in the State of California with the

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1 manifest intent of engaging in business within the State of California, including the sale and/or offer
2 for sale to internet users within the State of California. DEFENDANTS maintain a website through
3 which they solicit business throughout the United States, including within the State of California and
4 within this judicial district. Plaintiffs allege on information and belief that at all times relevant to this
5 Complaint, DEFENDANTS have continuously operated that website.

6     13.    DEFENDANTS have committed acts, related to the causes of action asserted in this
7 Complaint, which demonstrate that they have purposefully directed their activities towards the State of
8 California. As described more fully in this Complaint, these activities include selling counterfeit
9 products directly into the State of California. DEFENDANTS have also sold products that were
10 shipped from a location within the State of California. Plaintiffs further allege on information and
11 belief that DEFENDANTS regularly conduct business within the State of California, including within
12 the Central District of California.

13 **VENUE**

14     14.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because the
15 Defendants reside in this District and pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of
16 the events giving rise to the claim occurred within this District.

17 **FACTUAL ALLEGATIONS RELATING TO TRADEMARK REGISTRATIONS**

18     15.    Founded in 1984, CISCO is a global leader in technology, with a large and diverse
19 customer base spanning governments and large enterprises, small- to medium-sized businesses and
20 individual consumers. Among other areas, CISCO's business involves high quality networking and
21 communications technology, including telecommunications networking hardware, advanced
22 telecommunications network design, implementation services, high-end videoconferencing technology
23 and data center technology.

24     16.    CISCO has developed a strong name and reputation within the trade and among
25 members of the consuming public as a leading manufacturer of mission-critical networking and
26 telecommunications systems, and it sells these products worldwide. CISCO has invested substantial
27 effort and resources to develop and promote public recognition of the CISCO trade name and of the
28 family of CISCO-related marks. CISCO has used the family of CISCO trademarks to identify goods

and services as being genuine CISCO products, and the CISCO marks and name are well-recognized signifiers of CISCO's high-quality products and services.

17. CTI owns all rights, title, and interest in numerous federal trademark registrations, which are included on the Principal Register of the U.S. Patent and Trademark Office, (the "Cisco Marks"). These Cisco Marks are well known. They are used in connection with a range of telecommunications, computer hardware and software products and services. They include, but are not limited to, the following marks that are used in interstate commerce:

| Mark | Registration Number | Registration Date |
|---|---|---|
| CISCO | 1,542,339 | June 6, 1989 |
| CISCO SYSTEMS | 1,996,957 | August 27, 1996 |
| CISCO | 2,498,746 | October 16, 2001 |
| CISCO | 3,759,451 | March 9, 2010 |
| CISCO | 3,978,294 | June 14, 2011 |
| CISCO | 4,263,591 | December 25, 2012 |

18. The Cisco Marks are distinctive, having no meaning outside of their use by CISCO in its course of business operations and in its advertising to distinguish its products and services. CISCO uses these marks to advertise through a wide variety of media including television, radio, newspapers, magazines, billboards, direct mail, web sites, and in telephone directories across the country.

19. As a result of CISCO's extensive advertising and promotional efforts and its continuous use of its core Cisco Marks for more than 25 years, CISCO has attained one of the highest levels of brand recognition among consumers. As a result of CISCO's longstanding and widespread use and promotion of the Cisco Marks, CISCO's customers worldwide have come to rely upon the Cisco Marks to identify CISCO's high-quality goods and services. Many of CISCO's products are purchased by the U.S. Government, the military, and by other industries, in critical and life-essential applications.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

20.     Counterfeit CISCO products jeopardize the systems into which they are placed because they do not conform with CISCO's design, specifications, production standards or quality control, and, thus, lack reliability.  Counterfeit products that bear markings similar to the Cisco Marks provide customers with a false assurance that the products they have purchased are reliable and conform with CISCO's high standards.  When counterfeit products fail, the purchasers can suffer critical losses to their business, infrastructure, and security.

21.     In addition to harm to customers, the sale of counterfeit CISCO products also harms CISCO in many ways.  Among these, counterfeit CISCO products which fail create the false impression that CISCO products are unreliable, thereby improperly tarnishing CISCO's reputation and causing CISCO to suffer lost sales and business opportunities.  When customers purchase CISCO-branded parts that are unreliable counterfeits, their image of CISCO is diminished and CISCO's opportunity to sell genuine, high-quality products to those customers may be lost forever.  As a result, CISCO suffers substantial and irreparable harm to its brand, image, business, and the public's goodwill.  CISCO also suffers lost sales as the result of customers purchasing counterfeit products, instead of genuine CISCO parts.

22.     CISCO products that have been resold outside of CISCO's approved distribution channels are not normally covered by CISCO warranties or by CISCO service contracts, because CISCO cannot attest to their genuineness or condition.  This restriction also applies to counterfeit products that bear Cisco Marks.

### FACTUAL ALLEGATIONS RELATING TO DEFENDANTS' CONDUCT

23.     From at least February 2006 through the present, DEFENDANTS have sold and trafficked in counterfeit CISCO products ("Defendants' Infringing Products"). DEFENDANTS have done this despite (i) a cease and desist letter from Plaintiffs in 2006; (ii) a demand letter from Plaintiffs in 2012, (iii) at least two U.S. Customs and Border Patrol seizures of counterfeit goods, one in 2006 and another in 2011, (iv) the execution of a FBI search warrant in 2006 and the FBI's seizure of counterfeit and altered products during that execution, and (v) a visit by federal law enforcement officials in 2013.  These events as well as instances of counterfeit trafficking by DEFENDANTS are summarized below.

COMPLAINT

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8ᵀᴴ FLOOR
SAN FRANCISCO, CALIFORNIA 94111

24.     INFINITY MICRO specifically targets sales to government entities.  According to Infinity Micro's website (https://www.infinity-micro.com/government-sales.html), as of March 7, 2013, "Infinity Micro is proud to be an established supplier of over 200,000 name brand computer hardware, software, and networking products for Local, State and Federal Government agencies.  Our superior product selection, personal account management, and fast delivery options make us uniquely qualified to meet your projects head-on and provide the computer solutions you need on-time and under budget."  In addition, INFINITY MICRO states that it "welcomes government bids, and maintains a Quick Response Bid Desk to quickly and efficiently handle your RFQs and RFPs.  To receive a written quotation or bid, just send an e-mail describing your product requirements and specifications in detail to our Government Sales Team at sales@infinity-micro.com."

## Sale of Counterfeit "Cisco" Products in February 2006

25.     On or around February 9, 2006, DEFENDANTS sold two "Cisco" products (one WIC-1DSU-T1-V2 and one VWIC-1MFT-T1) to an investigator, who was working for CISCO.  DEFENDANTS represented that these "Cisco" products were new.  DEFENDANTS sent these products to the investigator from Infinity Micro Computer Inc., 5300 W. 104th St., Los Angeles, California 90045.  The investigator delivered these products to CISCO.  A CISCO engineer then inspected these products and determined that each was counterfeit.

26.     These counterfeit products contained markings that appeared indistinguishable from CISCO trademarks that are registered with the U.S. Patent and Trademark Office ("USPTO").

## Sale of Counterfeit "Cisco" Product in March 2006

27.     On or around March 2, 2006, DEFENDANTS sold one "Cisco" product (a GLC-LH-SM transceiver) to an investigator, who was working for CISCO.  DEFENDANTS represented that this "Cisco" product was new.  The investigator received this product from DEFENDANTS (via a Colorado company) and delivered it to CISCO.  A CISCO engineer then inspected it and determined that it was a counterfeit CISCO product.

28.     This counterfeit product contained markings that appeared indistinguishable from CISCO trademarks that are registered with the USPTO.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

**April 2006 Cease and Desist Letter**

29.    On April 6, 2006, Plaintiffs' outside counsel issued a Cease and Desist letter to DEFENDANTS demanding that they cease trafficking in counterfeit "Cisco" goods.

**June 2006 Federal Bureau of Investigation Search Warrant Execution and Seizure**

30.    On June 1, 2006, The Federal Bureau of Investigation ("FBI") executed a search warrant at DEFENDANTS' business address of 5300 West 104th Street, Los Angeles, CA 90045. In the course of their search, the FBI seized approximately twenty (20) products. Engineers inspected all products and determined that a portion of them were counterfeit CISCO products.

31.    These counterfeit products contained markings that appeared indistinguishable from CISCO trademarks, which are registered with the USPTO.

**June 2006 CBP Seizure Notification**

32.    On June 7, 2006, U.S. Customs and Border Protection ("CBP") seized 206 counterfeit "Cisco" products (WIC-1DSU-T1-V2s) at Los Angeles International Airport. CBP identified the exporter as "Data Express, No. 2 Guang Qian Bldg., Shannon Kowloon, Hong Kong." CBP identified the importer as "Infinity Micro, Inc., Attn: Michael, 5300 W. 104th Street, Los Angeles, CA 90045." Plaintiffs are informed and believe, and based thereon allege, that "Michael" is defendant MICHAEL.

**Sale of Counterfeit "Cisco" Products in April 2007**

33.    On or around April 11, 2007, DEFENDANTS sold four "Cisco" products (one NM-4T, one VWIC-1MFT-T1, and two WIC-2Ts) to an investigator, who was working for CISCO. DEFENDANTS represented that these "Cisco" products were new. DEFENDANTS sent these products to the investigator from Michael Banafsheda, 310-216-3401, Infinity Micro, 7601 East Treasure Drive, Miami, FL 33141. The investigator delivered these products to CISCO. A CISCO engineer then inspected these products and determined that each was counterfeit.

34.    This counterfeit product contained markings that appeared indistinguishable from CISCO trademarks that are registered with the USPTO.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

### Sale of Counterfeit "Cisco" Products in February 2009

35.     On or around February 4, 2009, DEFENDANTS sold one "Cisco" product (a WS-C2960-48TC-L) to a company in Florida.  DEFENDANTS represented that this "Cisco" product was new.  An engineer inspected this product and determined that it was counterfeit.

36.     This counterfeit product contained markings that appeared indistinguishable from CISCO trademarks that are registered with the USPTO.

### September 2011 CBP Seizure Notification

37.     On September 17, 2011, CBP seized two "Ethernet switches bearing a counterfeit trademark of" CTI at an Anchorage, Alaska Federal Express facility.  The switches were WS-C2960-24TC-Ls.  CBP identified the exporter as "Super Warehouse Transportations Co., Flat 30-31, 12/F Thriving Ind Centre, 26-38 Sha Tsui Rd, Tsuen NY, Hong Kong."  CBP identified the importer as "Infinity Micro Computer Inc., 5300 W. 104th Street, Los Angeles, CA 90045."

### Sale of Counterfeit "Cisco" Products in December 2011

38.     On or around December 28, 2011, DEFENDANTS sold one "Cisco" product (WS-C2960-24TC-L), which was the same model that CBP seized three months earlier, to an investigator who was working for CISCO.  DEFENDANTS represented that this "Cisco" product was new.  After the investigator received the product, he then delivered it to CISCO.  A CISCO engineer then inspected the product and determined that it was a counterfeit CISCO product.

39.     This counterfeit product contained markings that appeared indistinguishable from CISCO trademarks that are registered with the USPTO.

### July 2012 Letter Detailing Evidence

40.     On July 2, 2012, Plaintiffs sent a letter to DEFENDANTS informing them that Plaintiffs were aware of DEFENDANTS past infringing behavior, and detailed the past sales of counterfeit "Cisco" products by INFINITY MICRO.

### May 2013 "Knock and Talk"

41.     On May 24, 2013, two Department of Homeland Security, Homeland Security Investigations ("HSI") Agents entered DEFENDANTS' business offices with the intent to interview the proprietors of INFINITY MICRO, and with their consent, review and inspect certain CISCO

products in an attempt to determine if such products were counterfeit. The HSI Agents were initially allowed entry, but representatives of INFINITY MICRO demanded that they leave. The HSI Agents were not able to make any authenticity determinations of the CISCO products that were on the premises, but did inform the owner of INFINITY MICRO and its counsel of the purpose of their visit.

### Sale of Counterfeit "Cisco" Products in May 2013

42.     Less than a week after the HSI attempted interview, on or around May 29, 2013, DEFENDANTS sold two "Cisco" products (one GLC-LH-SM and one GLC-SX-MM) to an employee of CISCO's outside counsel.  On information and belief, Plaintiffs allege that DEFENDANTS represented that these "Cisco" products were new.  A CISCO engineer inspected these products and determined that each was counterfeit.

43.     This counterfeit product contained markings that appeared indistinguishable from CISCO trademarks that are registered with the USPTO.

### Purchase and Sale of Counterfeit "Cisco" Products by MICHAEL AND MATTHEW

44.     Plaintiffs are informed and believe, and based thereon allege, that defendants MICHAEL and MATTHEW purchased and sold counterfeit CISCO products throughout the time period addressed in this Complaint, to the present.

### FIRST CAUSE OF ACTION
### (Trademark Infringement Under Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a))

45.     Plaintiffs repeat, re-allege, and incorporate each of the allegations in the preceding paragraphs as if fully set forth herein.

46.     Plaintiffs' marks and the goodwill of the business associated with them are tremendously valuable in the United States and worldwide because they are distinctive and universally associated in the public perception with the highest quality network and communications technology products and services.

47.     DEFENDANTS have sold, offered to sell, distributed, and advertised—and continue to sell, offer to sell, manufacture, distribute, and advertise—networking hardware parts bearing counterfeit reproductions of the Cisco Marks without CISCO's consent.

COMPLAINT

48.     DEFENDANTS' actions have caused, and are likely to continue to cause, confusion, mistake, and deception as to the origin and quality of Defendants' Infringing Products because they are intentionally calculated to mislead the general purchasing public to believe that Defendants' Infringing Products originated from, are associated with, or are otherwise authorized by CISCO.

49.     Plaintiffs allege on information and belief that DEFENDANTS' infringing actions were committed fraudulently, willfully, and in bad faith, with knowledge of Plaintiffs' exclusive rights to and goodwill in the Cisco Marks, or with willful blindness to the same, and with the intent to cause confusion, to cause mistake and/or to deceive.

50.     DEFENDANTS' unauthorized use of the Cisco Marks constitutes trademark infringement of the federally-registered Cisco Marks and has caused substantial damage to CISCO and to the reputation and goodwill symbolized by the Cisco Marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

51.     DEFENDANTS' conduct described above, including the unauthorized use of the Cisco Marks in interstate commerce, have directly and proximately caused and unless enjoined, will continue to cause, substantial, irreparable injury to CISCO and to the business and goodwill represented by the Cisco Marks, which leaves Plaintiffs without an adequate remedy at law.

**SECOND CAUSE OF ACTION**
**(Trademark Counterfeiting Under Sections 32 of the Lanham Act,**
**15 U.S.C. § 1114(1)(b))**

52.     Plaintiffs repeat, re-allege, and incorporate each of the allegations in the preceding paragraphs as if fully set forth herein.

53.     DEFENDANTS have publically advertised, sold, offered to sell, and distributed Defendants' Infringing Products in interstate commerce in direct competition with CISCO and without authorization or consent to use the Cisco Marks but with full knowledge of CISCO's notorious prior rights in those marks.

54.     Defendants' Infringing Products reproduce, counterfeit, copy, and colorably imitate the Cisco Marks or display a spurious designation that is identical with, or substantially indistinguishable from, the Cisco Marks.  DEFENDANTS have applied their reproductions, counterfeits, copies, and

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1  colorable imitations of the Cisco Marks to labels, packages, wrappers, and advertisements intended to

2  be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising

3  of Defendants' Infringing Products, which is likely to cause confusion, to cause mistake, or to deceive.

4    55.    DEFENDANTS' unauthorized use of the Cisco Marks on or in connection with

5  Defendants' Infringing Products was conducted intentionally and with notice and full knowledge that

6  the use was unauthorized by CISCO.  Accordingly, DEFENDANTS' actions constitute willful

7  counterfeiting of the Cisco Marks in violation of 15 U.S.C. §§ 1114(1)(b)

8    56.    DEFENDANTS' conduct has directly and proximately caused CISCO to suffer damage

9  to the valuable Cisco Marks, and other damages in an amount to be proved at trial.  CISCO is left

10  without an adequate remedy at law and will continue to be damaged by Defendants' Infringing

11  Products unless this Court enjoins DEFENDANTS from their fraudulent and deceptive business

12  practices.

### THIRD CAUSE OF ACTION
**(False Designation of Origin Under Section 43(a) of the Lanham Act,
15 U.S.C. § 1125(a))**

15    57.    Plaintiffs repeat, re-allege, and incorporate each of the allegations in the preceding

16  paragraphs as if fully set forth herein.

17    58.    Defendants' Infringing Products are designed to be identical to genuine CISCO

18  products and thereby employ the same nature, style, look, and color as Cisco products.  Moreover, as

19  alleged above, DEFENDANTS sell products that have affixed counterfeit or infringing versions or

20  reproductions of the Cisco Marks to Infringing Products and/or to the packaging, wrapping, etc., in

21  which the infringing products are packaged.  This unauthorized use of the Cisco Marks is likely to

22  cause confusion, to deceive, and to mislead the consuming public to believe that there is some

23  affiliation, connection, or association between DEFENDANTS and CISCO and is likely to cause

24  confusion, mistake, or deception as to the origin, source, sponsorship, authorization, approval, or

25  affiliation of Defendants' Infringing Products.

26    59.    DEFENDANTS' actions, including their unauthorized use of the Cisco Marks in

27  commerce, constitute false designation of origin, false or misleading descriptions of fact, and false or

28

misleading representations of fact, which have caused, and are likely to continue to cause, confusion, mistake, and deception, as to DEFENDANTS' association or affiliation with CISCO, or lack thereof, as well as to the origin, source, and sponsorship of Defendants' Infringing Products, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

60.     DEFENDANTS' actions described above, including its unauthorized and misleading use of the Cisco Marks in commerce have caused, and unless enjoined, will continue to cause, substantial and irreparable injury to CISCO and to the business and goodwill represented by the Cisco Marks, thereby leaving Plaintiffs without an adequate remedy at law.

## FOURTH CAUSE OF ACTION
### (Trademark Dilution, 15 U.S.C. § 1125(c))

61.     Plaintiffs repeat, re-allege, and incorporate each of the allegations in the preceding paragraphs as if fully set forth herein.

62.     The Cisco Marks are famous marks within the meaning of the Lanham Act, 15 U.S.C. § 1125(c). Among other characteristics: the Cisco Marks are inherently distinctive; CISCO has used the Cisco Marks continuously on their products and in their advertising, marketing, and promotional materials, all have which have a worldwide distribution, for roughly 30 years; during that period CISCO has sold its products around the world in substantial volume; the Cisco Marks are among the preeminent marks within the networking, communications technology, and telecommunications networking industries, which creates a high degree of recognition among consumers; there are no trademarks similar to the Cisco Marks that compete for recognition; and, finally, the Cisco Marks are subject to valid registrations on the Principal Registry.

63.     The Cisco Marks have achieved worldwide recognition on account of CISCO's reputation for producing high-quality, reliable products and CISCO's efforts to promote that reputation and the Cisco Marks through worldwide advertisement.

64.     DEFENDANTS' unauthorized use of the Cisco Marks is likely to cause dilution by blurring because it impairs the distinctiveness of CISCO's world famous marks. Because Defendants' Infringing Products bear an intentional, striking visual resemblance to genuine CISCO products, the addition of unauthorized versions of the Cisco Marks to Defendants' Infringing Products is likely to

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1  cause consumers to mistakenly associate DEFENDANTS' illicit use of the Cisco Marks with the

2  Cisco Marks themselves.

3      65.     The following factors support the likelihood of dilution of the Cisco Marks by blurring:

4  (a) DEFENDANTS' are copying, reproducing, or otherwise making unauthorized use of the Cisco

5  Marks themselves so DEFENDANTS' reproductions and/or counterfeit versions of the Cisco Marks

6  are similar, if not identical, to CISCO's famous marks; (b) the Cisco Marks are famous worldwide and

7  inherently distinctive, having no meaning outside of their use by CISCO in its global business

8  operations and advertising since 1984; (c) CISCO owns exclusive rights to the Cisco Marks and has

9  been making continuous and exclusive use thereof; (d) the Cisco Marks are famous and recognized

10  worldwide as signifiers of genuine, high-quality Cisco products; (e) based on DEFENDANTS'

11  advertising and offers to sell Defendants' Infringing Products, DEFENDANTS used the Cisco Marks

12  without authorization with the intent to create an association between their counterfeit or infringing

13  versions and the Cisco Marks; and (f) on information and belief, purchasers have mistakenly

14  associated the Cisco Marks with DEFENDANTS' unauthorized uses thereof.

15      66.     DEFENDANTS' conduct as alleged above is causing dilution of the Cisco Marks by

16  tarnishment and harm to CISCO's reputation because Defendants' Infringing Products, complete with

17  illicit use of the Cisco Marks, are confusingly similar to Cisco products such that consumers may

18  improperly associate DEFENDANTS' low-quality counterfeit or infringing goods with CISCO goods.

19      67.     DEFENDANTS' conduct, as indicated above, dilutes, blurs, and tarnishes the Cisco

20  Marks in a manner that destroys the distinctiveness of the famous Cisco Marks, causing damage to

21  CISCO and the business and goodwill represented by the Cisco Marks in violation of the Federal

22  Trademark Dilution Act, 15 U.S.C. § 1125(c).

23      68.     DEFENDANTS' actions that have diluted the Cisco Marks have caused, and unless

24  enjoined, will continue to cause, substantial and irreparable injury to CISCO, the Cisco Marks, and to

25  the business and goodwill represented by the Cisco Marks such that CISCO has no adequate remedy

26  at law.

27

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1

2

**FIFTH CAUSE OF ACTION**
**(California Statutory Dilution,**
**Cal. Bus. & Prof. Code §§ 14245 and 14247)**

3

4

69.    Plaintiffs repeat, re-allege, and incorporate each of the allegations in the preceding paragraphs as if fully set forth herein.

5

6

70.    The Cisco Marks are famous and distinctive in the State of California by virtue of their inherent and acquired distinctiveness and extensive, exclusive use.

7

8

71.    DEFENDANTS began using counterfeit and confusingly similar versions of the Cisco Marks after they achieved their distinctive and famous status.

9

10

72.    DEFENDANTS conduct constitutes dilution of the Cisco Marks in violation of California Business & Professions Code §§ 14245 and 14247.

11

**SIXTH CAUSE OF ACTION**
**(California Statutory Unfair Competition,**
**Cal. Bus. & Prof. Code § 17200 et seq.)**

12

13

73.    Plaintiffs repeat, re-allege, and incorporate each of the allegations in the preceding paragraphs as if fully set forth herein.

14

15

74.    California Business and Professions Code § 17200, et seq: prohibits acts of unfair competition, which means any "unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising."

16

17

18

75.    DEFENDANTS have engaged in unlawful business acts or practices in pursuing the above-described marketing and sale of counterfeit and unauthorized "Cisco" products and by committing the above-described acts in violation of the Lanham Act, including trademark infringement and dilution, as well as the other acts and practices alleged herein, all in an effort to gain unfair competitive advantage and a windfall in the marketplace.

19

20

21

22

23

76.    DEFENDANTS' practices were unlawful, unfair, and/or fraudulent, and constitute unlawful, unfair, and/or fraudulent competition as defined by Cal. Bus. & Prof. C. § 17200, et seq.

24

25

77.    DEFENDANTS' unfair competition and business practices have caused and, unless restrained by this Court, will continue to cause irreparable injury to CISCO for which it has no adequate remedy at law.

26

27

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SEVENTH CAUSE OF ACTION
### (California Common Law Trademark Infringement)

78.     Plaintiffs repeat, re-allege, and incorporate each of the allegations in the preceding paragraphs as if fully set forth herein.

79.     Defendant's use of the Cisco Marks in connection with the marketing and sale of counterfeit and unauthorized "Cisco" products is likely to cause confusion, mistake, and deception as to whether these products are approved of, sponsored by, or somehow affiliated with CISCO.

80.     DEFENDANTS' actions constitute common law unfair competition and trademark infringement and have caused Plaintiffs damages in an amount to be determined at trial.

81.     CISCO alleges on information and belief that DEFENDANTS have derived and continue to derive substantial revenue and profits from their past and ongoing unfair competition and trademark infringement, arising from their use of the Cisco Marks.

82.     DEFENDANTS' actions have caused and, unless restrained by this Court, will continue to cause irreparable injury to CISCO.

## EIGHTH CAUSE OF ACTION
### (Fraud, Cal. Civ. Code § 1710)

83.     Plaintiffs repeat, re-allege, and incorporate each of the allegations in the preceding paragraphs as if fully set forth herein.

84.     In each sale described in this complaint, by selling products that contained marks that are substantially similar to the Cisco Marks, DEFENDANTS intentionally misrepresented that the products they sold were genuine Cisco products. DEFENDANTS also intentionally misrepresented that the products they sold were genuine Cisco products by including the CISCO name and Cisco Marks in their advertisements for each sale that is described in this Complaint. These representations were false.

85.     Plaintiffs allege on information and belief that DEFENDANTS knew that these representations were false at the time that they made them, or DEFENDANTS made these representations recklessly and without regard for their truth.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

86. In each sale, described in this Complaint, DEFENDANTS made these representations in order to induce purchasers to act in reliance upon the representations and purchase products from DEFENDANTS, with the mistaken belief that they were purchasing genuine Cisco products. DEFENDANTS intended to deprive CISCO of market opportunities, and they intended to harm CISCO's reputation and brand by engaging in this conduct.

87. Plaintiffs have been harmed by DEFENDANTS' fraudulent misrepresentations in that CISCO lost market opportunities as consumers purchased Defendants' Infringing Products, instead of purchasing genuine CISCO products. Further CISCO's brand and reputation have been harmed by DEFENDANTS' sale of inferior products, because DEFENDANTS create the appearance that Defendants' Infringing Products are related to CISCO.

88. DEFENDANTS' misrepresentations were a substantial factor in causing Plaintiffs' harms because these sales would not reasonably have occurred absent DEFENDANTS' misrepresentations that the products they sold were genuine Cisco products.

## PRAYER FOR RELIEF

That, following trial of this action, the Court enter judgment as follows:

1. That DEFENDANTS directly infringed and counterfeited the Cisco Marks, and engaged in unfair competition through use of their counterfeit and/or infringing marks;

2. That DEFENDANTS' trademark infringement and counterfeiting were knowing and willful and committed with bad faith and intent to deceive;

3. That this case is exceptional under 15 U.S.C. § 1117(a);

4. That a preliminary and permanent injunction be issued enjoining DEFENDANTS and their agents, servants, employees, and attorneys and those persons in active concert or participation with them:

    a. From using any of the Cisco Marks or any mark similar thereto in connection with the sale of any unauthorized goods or the rendering of any unauthorized services;

    b. From using any logo, trade name or trademark which may be calculated to falsely represent or which has the effect of falsely representing that the

1  services or products of defendant or of third parties are sponsored by,

2  authorized by, or in any way associated with Plaintiffs;

3      c.    From infringing Plaintiffs' registered trademarks;

4      d.    From otherwise unfairly competing with Plaintiffs;

5      e.    From falsely representing themselves as being connected with Plaintiffs or

6  sponsored by or associated with Plaintiffs or engaging in any act which is

7  likely to falsely cause the trade, retailers and/or members of the purchasing

8  public to believe that any of the DEFENDANTS is associated with Plaintiffs;

9      f.    From using any reproduction, counterfeit, copy, or colorable imitation of the

10  Cisco Marks in connection with the publicity, promotion, sale or advertising of

11  goods sold by DEFENDANTS including, without limitation, computer

12  hardware, software, switches, routers, electronics, telecommunications, or

13  other communications equipment bearing a copy or colorable imitation of the

14  Cisco Marks; and

15      g.    From affixing, applying, annexing, or using in connection with the sale of any

16  goods, a false description or representation, including words or other symbols

17  tending to falsely describe or represent such goods as being those of Plaintiffs

18  and from offering such goods in commerce;

19      5.    That Plaintiffs be awarded actual damages;

20      6.    That Plaintiffs be awarded statutory damages of $2 million per infringed mark, or

21  $12 million for the 6 infringed Cisco Marks;

22      7.    That Plaintiffs be awarded prejudgment interest;

23      8.    That Plaintiffs be awarded reasonable attorneys' fees;

24      9.    That Plaintiffs be awarded treble damages;

25      10.    That Plaintiffs be awarded the DEFENDANTS' profits and actual damages;

26      11.    That Plaintiffs be awarded punitive and exemplary damages;

27      12.    That Plaintiffs be awarded the costs of prosecuting this claim;

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

1       13.    That DEFENDANTS be required to account to Plaintiffs for all profits and damages

2   resulting from DEFENDANTS' respective infringing activities and that the award to Plaintiffs be

3   increased as provided for under 15 U.S.C. § 1117; and

4       14.    That Plaintiffs be granted such other and further relief as the Court deems just and

5   proper.

6

7   DATED: April ___/6___, 2014        SIDEMAN & BANCROFT LLP

8

9                                     By: _____

10                                       RICHARD J. NELSON (State Bar No. 141658)

11                                       One Embarcadero Center, 22nd Floor

12                                       San Francisco, California 94111
                                    Telephone: (415) 392-1960

13                                       Facsimile:  (415) 392-0827

14                                       Attorneys for Plaintiffs CISCO SYSTEMS, INC. and CISCO TECHNOLOGY, INC.

15   **DEMAND FOR JURY TRIAL**

16       Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs CISCO SYSTEMS, INC. and

17   CISCO TECHNOLOGY, INC. hereby demand a trial by jury.

18   DATED: April ___/6___, 2014        SIDEMAN & BANCROFT LLP

19

20                                     By: _____

21                                     RICHARD J. NELSON (State Bar No. 141658)

22                                     One Embarcadero Center, 22nd Floor

23                                     San Francisco, California 94111
                                  Telephone: (415) 392-1960

24                                     Facsimile:  (415) 392-0827

25                                     Attorneys for Plaintiffs CISCO SYSTEMS, INC. and CISCO TECHNOLOGY, INC.

26

27   2835-157\2062175v1

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 8TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111

COMPLAINT